Paul L. More, SBN 228589
F. Benjamin Kowalczyk, SBN 316796
McCRACKEN, STEMERMAN & HOLSBERRY
595 Market Street, Suite 800
San Francisco, California 94105
Tel. No.:    (415) 597-7200
Fax No.:    (415) 597-7200
E-mail:      pmore@msh.law
                fbkowalczyk@msh.law

*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 396,<br><br>Petitioner,<br>vs.<br><br>MADISON MATERIALS.; and DOES I through X,<br><br>Respondent. | Case No.: 18-cv-01772<br><br>**TEAMSTERS LOCAL 396's PETITION TO COMPEL ARBITRATION**<br><br>**[29 U.S.C. § 185(a); 9 U.S.C. § 4]** |

1. This petition to compel arbitration is brought pursuant to Labor-Management Relations Act ("LMRA") § 301, 29 U.S.C. § 185. Petitioner Teamsters Local 396 (the "Union") and Respondent Madison Materials ("Madison") were parties to a Memorandum of Agreement that required Madison to engage in interest arbitration over unresolved terms in their initial collective bargaining agreement. Madison materials refuses to engage in interest arbitration over such unresolved terms, despite its contractual promise to do so.

2. The Memorandum of Agreement provides that any party that unsuccessfully resists arbitration shall pay the other party's legal fees in enforcing the MOA. Accordingly, and because Respondent Madison's refusal to arbitrate is without substantial justification, Petitioner Teamsters Local 396 (the "Union") requests that the Court award the Union its legal fees and costs in bringing this action.

## PARTIES

3. Petitioner Teamsters Local 396 is a labor organization as that term is defined in Section 2(5) of the Labor-Management Relations Act, 29 U.S.C. § 152(5), representing employees in an industry affecting commerce. The Union's principal office is at 880 Oak Park Rd. #200 in Covina, California.

4. Respondent Madison is a California corporation that maintains its principal office at 1035 East 4th Street in Santa Ana, California.

## JURISDICTION

5. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331, Section 301 of the Labor Management Relations Act ("LMRA"), 29 USC § 185, and Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4.

## VENUE

6. Venue is in this this Court is proper under 28 U.S.C. § 1391, 29 U.S.C. §185 and 9 U.S.C. § 4.

## FACTUAL ALLEGATIONS

7. The Union and Madison entered into a Memorandum of Agreement on October 15, 2014. A copy of that Memorandum of Agreement is attached as Exhibit A to this Petition. The MOA sets forth ground rules that both sides will follow in the event that the Union seeks to organize certain of Madison's employees.

8. Under the MOA, the Union promises that it will not engage in striking, picketing, or other economic activity at Madison's facility. In accord with the MOA, the Union has not exercised its federal statutory and constitutional rights to take economic action against Madison.

9. In return for the Union's promise that it will not take economic action against Madison, the MOA requires that Madison take a neutral approach to unionization of covered employees, and that it not "do any action nor make any statement that will directly or indirectly state or imply any opposition by the Employer to the selection by such Employees of a collective bargaining agent[.]"

10. The MOA affords the Union other rights, including a limited right of access to Madison's property in order to communicate with covered employees and the right to certain contact information about those employees.

11. The MOA contains procedures for determining whether a majority of covered employees have selected the Union to be their exclusive representative. Specifically, Madison and the Union agreed that an arbitrator would review authorization cards of Madison employees stating that they wish to be represented by the Union to determine whether a majority of those employees had authorized the Union to be their representative.

12. On October 2, 2017, Arbitrator Frederic Horowitz conducted a review of Madison employees' authorization cards and determined that a majority of Madison employees wished to be represented by the Union. Representatives of the Union and Madison signed a verification attesting that the Union is the exclusive representative for a unit at the Employer's facility, effective October 5, 2017.

TEAMSTERS LOCAL 396's PETITION TO COMPEL ARBITRATION         CASE NO.

13. Paragraph 10 of the MOA provides: "If the Union is recognized as the exclusive collective bargaining representative as provided in paragraph 9, negotiations for a collective bargaining agreement shall be commenced immediately and conducted diligently and in good faith to the end of reaching agreement expeditiously.  If the parties are unable to reach agreement on a collective bargaining agreement within 90 days after recognition pursuant to Paragraph 9, all unresolved issues shall be submitted for resolution to final and binding arbitration pursuant to Paragraph 14."  The MOA sets forth factors that will guide the arbitrator in an interest arbitration determining the contents of the parties' collective bargaining agreement.

14. The Union immediately sought to negotiate with Madison over the terms of the collective bargaining agreement that would apply to Madison employees.  It sought dates from Madison on which its representatives would be prepared to negotiate.  However, Madison's representatives ignored these requests for negotiation dates, or claimed that they were too busy to meet with the Union.  Madison representatives did not agree to an initial negotiating session until January 10, 2018.

15. The Union presented its collective bargaining proposals on January 10, 2018.  It sought to schedule further bargaining dates to continue collective bargaining negotiations, but Madison representatives again declined to provide dates.  Madison representatives did not agree to meet again with the Union until March 22, 2018.

16. At the March 22, 2018 negotiation session, however, Madison representatives declined to negotiate with the Union, claiming that they would not do so until there had been another election by Madison employees to demonstrate that they wished to be represented by the Union, even though Madison employees had already demonstrated their desire for the Union's representation through the process agreed upon by Madison and the Union.

17. Under the MOA, if the parties were "unable to reach agreement on a collective bargaining agreement within 90 days after recognition . . .  all unresolved issues shall be submitted for resolution to final and binding arbitration[.]"

18. On March 30, 2018, the Union moved all unresolved collective-bargaining issues to interest arbitration, notifying that arbitrator and requesting hearing dates. On April 4, 2018, Madison's representative responded to the arbitrator, stating that Madison refused to engage in interest arbitration.

19. Madison subsequently filed unfair labor practice charges against the Union, alleging that the Union's invocation of the MOA's interest arbitration clause somehow violated the Union's duty to negotiate in good faith with Madison under the National Labor Relations Act. Region 21 of the National Labor Relations Board dismissed Madison's unfair labor practice charge on August 23, 2018.

## CAUSE OF ACTION

### [Petition to Compel Arbitration, LMRA § 301, 29 U.S.C. § 185]

20. The Union incorporates Paragraphs 1-19 as if expressly set forth herein.

21. The Memorandum of Agreement is a labor-management agreement governed by LMRA § 301, 29 U.S.C. § 185. *Hotel & Restaurant Employees Union Local 2 v. Marriott Corp.*, 961 F.2d 1464 (9th Cir. 1992).

22. Madison has a current and ongoing contractual obligation to engage in interest arbitration over unresolved issues in its initial collective bargaining agreement with the Union. Madison has failed to comply with that obligation, and the Court should now compel Madison to do so.

## RELIEF REQUESTED

Wherefore, the Union requests that the Court issue an order:

1. Directing NASA to proceed to interest arbitration under the MOA.

2. Awarding the Union's attorneys' fees for all work performed in this lawsuit, and retaining jurisdiction to hear a supplemental motion concerning the amount of such fees.

3. All other relief that the Court deems appropriate.

4

TEAMSTERS LOCAL 396's PETITION TO COMPEL ARBITRATION                              CASE NO.

Dated:  September 28, 2018    Respectfully submitted,

*/s/ Paul L. More*
Paul L. More, SBN 228589
F. Benjamin Kowalczyk, SBN 316796
McCRACKEN, STEMERMAN & HOLSBERRY
595 Market Street, Suite 800
San Francisco, California 94105
Tel. No.:     (415) 597-7200
Fax No.:     (415) 597-7200
E-mail:       pmore@msh.law
                    fbkowalczyk@msh.law

*Attorneys for Petitioner*

# Exhibit A

## MEMORANDUM OF AGREEMENT

THIS AGREEMENT is made and entered into by and between Madison Materials (hereinafter the "Employer"), and Teamsters Local Union No. 396 (the "Union").

1. This Agreement shall cover all employees employed in classifications listed in Exhibit A, or in classifications called by different names when performing similar duties, (referred to hereinafter as "Employees") at any and all facilities operated by the specifically named and referenced Employer located within the territorial jurisdiction of the Union (hereinafter referred to as the "facilities") which during the term of this Agreement is owned by, operated by or substantially under the control of the Employer.

2. The parties hereby establish the following procedure for the purpose of ensuring an orderly environment for the exercise by the Employees of their rights under Section 7 of the National Labor Relations Act and to avoid picketing and/or other economic action directed at the Employer in the event the Union decides to conduct an organizing campaign among Employees.

3. The parties mutually recognize that national labor law guarantees employees the right to form or select any labor organization to act as their exclusive representative for the purpose of collective bargaining with their employer, or to refrain from such activity.

4. The Employer will take a positive approach to the unionization of its Employees. The Employer will not do any action nor make any statement that will directly or indirectly state or imply any opposition by the Employer to the selection by such Employees of a collective bargaining agent, or preference for or opposition to any particular union as a bargaining agent.

5. The Union and its representatives will not coerce or threaten any Employee in an effort to obtain authorization cards.

6. Whenever the Employer finds it necessary to hire new Employees for vacancies in job classifications covered by this Agreement at the facilities, the Employer shall notify the Union to request applicants for such vacancies. When requesting applicants, the Employer shall state the qualifications applicants are expected to possess. The Union may furnish applicants for the job vacancies specified by the Employer. The Union's selection of applicants for referral shall be on a non-discriminatory basis and shall not be based upon or in any way affected by membership in the Union or the Union's bylaws, rules, regulations, constitutional provisions, or any other aspects or obligation of Union membership policies or requirements, or upon personal characteristics of an applicant where discrimination based upon such characteristics is prohibited by law. When hiring employees, the Employer shall give priority to applicants (hereafter, "displaced applicants") who performed work for a solid-waste that performed commercial or residential solid-waste hauling in the City of Los Angeles under an AB939 permit until displaced by a "franchisee", as that term is defined in City of Los Angeles Municipal Code, Chapter VI, Article 6, § 66.33.1(4). If a displaced applicant is qualified for the position applied for, the Employer shall offer such position to the displaced applicant. The Employer agrees that any interest demonstrated by an applicant in joining the Union shall not constitute grounds for discriminatory or disparate treatment nor adversely impact the applicant's ability to be hired by the Employer. The Employer shall be the sole judge of an applicant's suitability, competence and qualifications to perform the work of any job to be filled.

7.     If the Union provides written notice to the Employer of its intent to organize Employees covered by this Agreement, the Employer shall provide access to its premises and to such Employees by the Union. The Union may engage in organizing efforts in non-public areas of the facilities during Employees' non-working times (before work, after work, and during meals and breaks) and/or during such other periods as the parties may mutually agree upon. "Organizing" includes communicating with Employees before and after recognition of the Union as provided in Paragraph 9. At the Union's request, the Union and Employer will provide a joint letter to all Employees, summarizing the terms of this Agreement in language approved by both the Employer and the Union. The Employer will post this letter conspicuously in one or more non-public areas where other notices to Employees about their jobs are posted.

8.     Within ten (10) days following receipt of written notice of intent to organize Employees, the Employer will furnish the Union with any Employer handbook issued to Employees, as well as a complete list of Employees, including both full and part-time Employees, showing their job classifications, departments, seniority dates, wage rates, health and welfare benefits, home addresses, phone numbers and email addresses, to the extent known by the Employer. Thereafter, the Employer will provide updated complete lists monthly.

9.     The Union is not presently recognized as the exclusive collective bargaining representative of the Employees. The Union may request recognition as the exclusive collective bargaining agent for such Employees subject to paragraph fifteen (15). The Arbitrator identified in Paragraph 14, or another person mutually agreed to by Employer and Union, will conduct a review of Employees' authorization cards and membership information submitted by the Union in support of its claim to represent a majority of such Employees. Confidentiality of Union support or opposition shall be maintained in such review. If that review establishes that a majority of such Employees has designated the Union as their exclusive collective bargaining representative or joined the Union, the Employer will recognize the Union as such representative of such Employees. The Employer will not file a petition with the National Labor Relations Board for any election in connection with any demands for recognition provided for in this agreement or file a notice of voluntary recognition with the NLRB, so that the decision of when and whether to provide such notice is within the sole discretion of the Union. If the Union notifies the NLRB of recognition pursuant to this Agreement, the Employer shall post the NLRB notice of recognition in accordance with the instructions from the NLRB immediately upon receipt of the notice. The Union and the Employer agree that if any other person or entity petitions the National Labor Relations Board for any election as a result of or despite recognition of the Union pursuant to this Paragraph, (a) if the NLRB notice has been posted for 45 days before the petition is filed (a condition that applies only to this subparagraph (a)), the Employer and the Union will each request that the NLRB dismiss the petition on grounds of recognition bar or, if they have agreed to a collective bargaining agreement covering Employees at the time the petition is filed, on grounds of contract bar, (b) if the petition is not dismissed, the Employer and the Union shall agree to a full consent election agreement under Section 102.62(c) of the NLRB's Rules and Regulations, and (c) the Employer and the Union shall at all times abide by the provisions of this Agreement except that the Union may file unfair labor practice charges. Except as provided above, the Union and the Employer will not file any charges with the National Labor Relations Board in connection with any act or omission occurring within the context of this agreement; arbitration under Paragraph 14 shall be the exclusive remedy.

10. If the Union is recognized as the exclusive collective bargaining representative as provided in paragraph 9, negotiations for a collective bargaining agreement shall be commenced immediately and conducted diligently and in good faith to the end of reaching agreement expeditiously. If the parties are unable to reach agreement on a collective bargaining agreement within 90 days after recognition pursuant to Paragraph 9, all unresolved issues shall be submitted for resolution to final and binding arbitration pursuant to Paragraph 14. The arbitrator identified in paragraph 14 below shall be the arbitrator, unless another arbitrator is mutually agreed to by the parties. The arbitrator shall be guided by the following considerations among others: a) Employer's financial ability; b) size and type of the Employer's operations; c) cost of living as it affects the Employer's employees; d) ability of the employees, through the combination of wages, hours and benefits, to earn a living wage to sustain themselves and their families; and e) employees' productivity.

11. During the term of this Agreement, the Union will not engage in striking, picketing or other economic activity at the facilities, and the Employer will not engage in a lockout of the Employees. Notwithstanding the termination provision above, if the Employer recognizes any organization besides the Union as the exclusive collective bargaining representative of Employees, or any of them, this paragraph shall terminate immediately and without notice.

12. In the event that the Employer sells, transfers, or assigns all or any part of its right, title, or interest in the facilities or substantially all of the assets used in the operation of the facilities, or in the event there is a change in the form of ownership of the Employer, the Employer shall give the Union reasonable advance notice thereof in writing, and the Employer further agrees that as a condition to any such sale, assignment, or transfer, the Employer will obtain from its successor or successors in interest a written assumption of this Agreement and furnish a copy thereof to the Union, in which event the assignor shall be relieved of its obligations hereunder to the extent that the assignor has fully transferred its right, title, or interest.

13. The Employer shall incorporate the entirety of paragraphs 4,6, 7, 8, 9, and 10 of this of Agreement in any contract, subcontract, lease, sublease, operating agreement, franchise agreement or any other agreement or instrument giving a right to any person to operate any enterprise in the facilities employing Employees in classifications listed in Exhibit A, or in classifications called by different names when performing similar duties, and shall obligate any person taking such interest, and any and all successors and assigns of such person, to in turn incorporate said paragraphs in any further agreement or instrument giving a right as described above. The Employer shall enforce such provisions, or at its option, assign its rights to do so to the Union. The Employer shall give the Union written notice of the execution of such agreement or instrument and identify the other party(ies) to the transaction within 15 days after the agreement or instrument is signed. The terms "Employer" and "facilities" shall be modified in such agreement or instrument to conform to the terminology in such agreement or instrument but retain the same meaning as in this Agreement, and the terms "Employer" and "Employees" as used herein shall be modified to refer, respectively, to the person or persons receiving a right to operate an enterprise in the facilities and the employees of such person or persons.

14. The parties agree that any disputes over the interpretation or application of this Agreement shall be submitted to expedited and binding arbitration, with Fredric R. Horowitz serving as the arbitrator. If he is unavailable to serve within thirty (30) calendar days of

notification then another mutually acceptable person, shall be the arbitrator. The arbitrator shall have the authority to determine the arbitration procedures to be followed. The arbitrator and court shall also have the authority to issue preliminary equitable relief to enforce this Agreement without requiring the posting of a bond. The parties hereto agree to comply with any order of the arbitrator, which shall be final and binding. The United States District Court for the Central District of California shall have exclusive jurisdiction in any action concerning arbitration under this Agreement. The parties consent to the entry of any order of the arbitrator as the order or judgment of the Court, without entry of findings of fact and conclusions of law. The parties have consulted with counsel prior to entering into this Agreement and no party shall challenge the legality of any provision of this Agreement, nor assist anyone else in so doing, and breach of such promise shall result, without limitation, in an award of attorneys' fees among other remedies. Any party who unsuccessfully resists arbitration or an arbitration award under this Agreement shall be liable for the other party's legal fees and expenses for enforcement. No party has provided any consideration for this Agreement other than that set forth in this Agreement.

15. This Agreement shall be in full force and effect from the date of the selection and award of a franchise(s) from the City of Los Angeles, California to Ware Disposal Inc. This agreement between the parties exclusively exists because of Ware Disposal Inc.'s participation in the City of Los Angeles, California's Citywide Exclusive Franchise System for Municipal Solid Waste Collection and Handling Request for Proposal issued 11 June 2014. In the event Ware Disposal Inc. is awarded a franchise(s) from the City of Los Angeles, California, then this Agreement shall be in full force and effect for one (1) year from the date it is fully executed, or sooner upon execution of a collective bargaining agreement or issuance of an interest arbitration award which concludes the collective bargaining agreement negotiations, either of which explicitly supersedes this document. In the event Ware Disposal Inc. is not awarded a franchise(s) from the City of Los Angeles, California, this agreement shall be terminated with immediate effect.

IN WITNESS WHEREOF, the parties hereto by their duly designated representatives have hereunto set their hands.

FOR THE EMPLOYER:

MADISON MATERIALS INC.

By: _Judith Ware_

Its: _President_

Date: _10-14-14_

FOR THE UNION:

TEAMSTERS LOCAL UNION NO. 396

By: _Ron Herrera_

Its: _Secretary Treasurer_

Date: _10.15.14_

## EXHIBIT A

All regular full-time and regular part-time First Mechanics, Second Mechanics, Third Mechanics, Truck Welders, Bin Welders, Bin Repair Employees, Truck Maintenance Employees, Tiremen, Painters, Parts Clerks, Fuelers, Truck Washers, Yard Support Employees, Transfer Drivers, Dozer Operators, Loader Operators, Yard Operators, Sweepers, Laborer, Sorters and Spotters/Traffic Control Employees employed at the facilities, but excluding all secretarial, office clerical and sales employees and all managers (which includes the Weighmaster position) and guards as defined under the National Labor Relations Act.